# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **RCP PUBLICATIONS INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15 C 11398** |
| | ) | |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

RCP Publications Inc. has sued the City of Chicago for violating its First

Amendment rights and the rights of a class of those similarly situated.  RCP contends

that section 10-8-320 of the Chicago Municipal Code (entitled "Posting Bills") is an

unconstitutional restriction on speech.  The City has moved the Court to dismiss the

complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  For the reasons

stated below, the Court denies the City's motion.

### Background

RCP Publications is a not-for-profit corporation based in Chicago that publishes a

variety of materials related to political, economic, and social issues.  In March 2015,

RCP hosted on its website an online premiere of a movie called "Revolution and

Religion: The Fight for Emancipation and the Role of Religion," making the film available

for free.  A second organization, the BA Everywhere Committee, hosted an in-person

premiere for the film.  The complaint does not allege whether the in-person showing

was free or whether, instead, there was a charge to see the film.

BA Everywhere produced posters advertising both the online and in-person premieres of the film. According to RCP, BA Everywhere gave copies of the posters to its supporters to distribute how they wished. An unknown person taped a copy of the BA Everywhere poster to a street light pole at 5701 S. Kimbark Avenue in Chicago, allegedly without RCP's knowledge. On July 14, 2015, RCP received official notice that it had violated ordinance section 10-8-320 of the Chicago Municipal Code, which involves the posting of "commercial advertising material." The ordinance provides:

> No person shall distribute or cause others to distribute, as defined in Section 10-8-325, commercial advertising material by means of posting, sticking, stamping, tacking, painting or otherwise fixing any sign, notice, placard, bill, card, poster, advertisement or other device calculated to attract the attention of the public, to or upon any sidewalk, crosswalk, curb or curbstone, flagstone or any other portion or part of any public way, lamppost, electric light, traffic light, telegraph, telephone or trolley line pole, hydrant, shade tree or tree-box, or up on the piers, columns, trusses, girders, railings, gates or parts of any public bridge or viaduct, or upon any pole box or fixture of the police and fire communications system . . ., or on any bus shelter, except that the city may allow the posting of decorative banners in accordance with Section 10-8-340 below.

Chi. Mun. Code § 10-8-320(a). The ordinance does not define "commercial advertising material." It establishes a rebuttable presumption that anyone whose goods, services, or activites are promoted in the commercial advertising matter caused it to be distributed. *Id.* § 10-8-320(b). It provides for a fine up to $1,000 for each offense. *Id.* § 10-8-320(c).

RCP contested the ticket. On November 16, 2015, the administrative law judge handling the matter found that RCP liable had violated the ordinance and imposed a fine of $350 plus $40 in fees.

One month later, RCP filed the present lawsuit. RCP contends that section 10-8-

320 violates its First Amendment rights and those of all persons who have been ticketed or fined under the ordinance. RCP argues that the ordinance is an unconstitutional content-based restriction because it regulates speech based on the topic discussed, specifically, it restricts "commercial" signs but not others. According to RCP, there is no compelling government interest served by the restriction.

The City has moved to dismiss, arguing that the ordinance does not violate the First Amendment and that RCP has failed to state a plausible claim. The Court denies the City's motion for the reasons stated below.

## Discussion

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "the degree of specificity required is not easily quantified . . . the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). The Court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

## A.     Commercial or noncommercial speech

The First Amendment prohibits the government from "abridging the freedom of speech." U.S. Const. amend. I. Certain categories of speech—like commercial

speech—receive a lesser degree of protection. *See Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 515 (7th Cir. 2014). "[C]ommercial speech is constitutionally protected but governmental burdens on this category of speech are scrutinized more leniently than burdens on fully protected noncommercial speech." *Id.* (citing *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 477 (1989)).

The "starting point" definition for commercial speech is speech that "proposes a commercial transaction." *Jordan*, 743 F.3d at 516. The Seventh Circuit has identified guideposts for classifying speech as commercial speech, including whether 1) the speech is an advertisement; 2) the speech refers to a specific product; and 3) the speaker has an economic motivation for the speech. *See United States v. Benson*, 561 F.3d 718, 725 (7th Cir. 2009) (citing *Bolger v. Youngs Drugs Prods. Corp.*, 463 U.S. 60, 66-67 (1983)). "This is just a general framework, however; no one factor is sufficient, and *Bolger* strongly implied that all are not necessary." *Jordan*, 743 F.3d at 517.

The parties have briefed the motion to dismiss on the premise that the ordinance is a regulation of commercial speech and only that. In the Court's view, that is less than clear. Specifically, the Court cannot say, based on RCP's complaint, that the speech for which it was penalized under the City's ordinance is appropriately classified as commercial in the first place. The film itself plainly had a political or social message; that much is clear from the description in the complaint. Although the poster publicized the in-person and online premieres of the film, that does not necessarily make it commercial speech. Among other things, there is no indication whether RCP had an economic motivation. Further, the political nature of the film and of RCP suggests the speech being regulated might actually be political—similar, perhaps, to a poster

promoting a rally for a political candidate.  This could affect the standard of review used to assess the ordinance, because "[l]aws that burden political speech are subject to strict scrutiny."  *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340 (2010).

The boundary between commercial speech and non-commercial speech is not always clear, as reflected by the Seventh Circuit's very extended discussion of this point in *Jordan.  Jordan*, 743 F.3d at 515-21.  There are at least some cases in which it is "legally or practically impossible for the speaker to separate the commercial and noncommercial elements of his speech," *id.* at 521, and it is at least conceivable that this is one such case—the parties have not addressed the point.  If this is such a case, then the question is whether, "taken as a whole," the speech is properly classified as noncommercial.  *Id.* at 520 (quoting *Fox*, 492 U.S. at 474).

The lack of clarity regarding whether the poster was actually "commercial speech" as cases under the First Amendment use that term suggests a potential (though unraised) statutory vagueness argument.  *See Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 478-79 (7th Cir. 2012) ("[T]he void-for-vagueness doctrine protects against the ills of a law that fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.").  As the Court has noted, the ordinance provides no definition or guidance regarding what constitutes "commercial advertising material" subject to the ban.  But because the parties have not addressed this point, the Court leaves it for another day.

**B.     Application of the law regarding commercial speech**

Because the parties discuss the ordinance's constitutionality based on the

premise that it is a regulation of commercial speech, the Court will address their arguments even though, as just discussed, it is not clear that the ordinance is actually that focused. According to RCP, section 10-8-320 is an improper content-based restriction because it distinguishes between commercial and non-commercial speech. RCP further argues that the City cannot establish a compelling interest for the ordinance or that it is narrowly tailored to meet such an interest and that the ordinance does not survive strict scrutiny. The City argues that the ordinance is not subject to strict scrutiny but rather that the applicable standard is the intermediate scrutiny standard for commercial speech set out in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561 (1980).

RCP's primary argument rests upon its contention that the Supreme Court's recent decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), changes the law with respect to legislation regulating commercial speech. In *Reed*, the Supreme Court examined the constitutionality of a local ordinance that placed certain restrictions on outdoor signs depending on the signs' content. *Reed*, 135 S. Ct. at 2224-26. Specifically, the ordinance prohibited outdoor signs anywhere without a permit but exempted twenty-three categories of signs, including "ideological signs," "political signs," and "temporary directional signs relating to a qualifying event," terms that were each defined in the ordinance. Significantly, each of these exempted categories of signs was regulated somewhat differently in terms of allowed sign size and the types of locations where signs could be placed. The Court concluded that the distinctions the ordinance made among different types of signs was a paradigmatic example of content-based discrimination, because it "single[d] out specific subject matter for differential

treatment, even if it d[id] not target viewpoints within that subject matter." *Id.* at 2230.

This content-based discrimination required subjecting the ordinance to strict scrutiny,

which in turn required the town to demonstrate that it was narrowly tailored to address a

compelling government interest. *Id.* at 2231. On this point, the Court held that the

ordinance failed—its distinctions were "hopelessly underinclusive," because the

"temporary directional signs [were] no greater an eyesore than ideological or political

ones." *Id.* (citing *Discovery Network*, 507 U.S. at 425). As a result, the Court held that

the code was not narrowly tailored to address the two governmental interests proffered

by the town—aesthetics and traffic safety. *Id.*

RCP argues that the City's ordinance is an improper content-based restriction

under *Reed* because its restrictions single out commercial advertisements. This Court,

however, does not see *Reed* as overturning the Supreme Court's consistent

jurisprudence subjecting commercial speech regulations to a lesser degree of judicial

scrutiny. The case says nothing of the kind, indeed, it does not even address the

commercial-noncommercial distinction.

The Seventh Circuit has not yet addressed whether *Reed* applies to laws

targeting commercial speech for differential treatment. The Seventh Circuit has cited to

*Reed* four times: in challenges to laws restricting private signs on public ways, peddling

near Wrigley Field, advertisements of adult-entertainment clubs, and panhandling on

city streets. *See Constr, and Gen. Laborers Local Union No 330 v. Town of Grand

Chute*, --- F.3d ----, 2016 WL 4410073 (7th Cir. Aug. 19, 2016); *Left Field Media LLC v.

City of Chicago*, 822 F.3d 988 (7th Cir. 2016); *BBL, Inc. v. City of Angola*, 809 F.3d 317

(7th Cir. 2015); *Norton v. City of Springfield*, 806 F.3d 411 (7th Cir. 2015). The court

determined that *Reed* applied to the panhandling restriction in *Norton* but not to the peddling restriction in *Left Field* or the adult-entertainment restriction in *BBL, Inc.* The court did not resolve *Town of Grand Chute* on the merits, though it noted that District Court should not dismiss the remanded case based on the town's argument that it lacked "an invidious reason" for preferring some speech over other speech, stating that "*Reed* tells us that content discrimination is almost always forbidden." *Town of Grand Chute*, 2016 WL 4410073, *3. That statement, however, had nothing to do with the distinction between noncommercial and commercial speech; it concerned the contention that the town had selectively enforced a sign ban based on the content of the particular sign. *See id.* at *2.

In a footnote in *BBL, Inc.*, the Seventh Circuit noted its belief that *Reed* did not upend established doctrine for evaluating the regulation of businesses that offer sexually explicit entertainment—"a category the Court has said occupies the outer fringes of First Amendment protection." *BBL, Inc.*, 809 F.3d at 326 n.1. This suggests that the Seventh Circuit does not see *Reed* as rewriting the Supreme Court's free speech jurisprudence.

Another judge in this District has considered the effect of *Reed* on the First Amendment treatment of commercial speech, and he reached the same conclusion this Court reaches here. *See Peterson v. Vill. of Downers Grove*, 150 F. Supp. 3d 910 (N.D. Ill.) (Chang, J.). In *Peterson*, Judge Chang acknowledged that *Reed*'s reach is unclear. *Id.* at 927. Still, absent further guidance from the Seventh Circuit or Supreme Court, Judge Chang concluded that *Reed* does not overrule decades of jurisprudence regarding commercial speech. *Id.* at 928. He noted that the majority opinion's failure to

mention *Reed*'s impact on commercial speech was "not surprising, because . . . all of the restrictions at issue in *Reed* applied only to *non*-commercial speech."  *Id.* at 927-28.

Further, the Supreme Court has been quite clear that it is that Court's own prerogative to overrule its precedent.  *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989) ("If a precedent of th[e] [Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court . . . should follow the case which directly controls, leaving to th[e] [Supreme] Court the prerogative of overruling its own decision").  *Reed* did not even cite to *Central Hudson*, let alone expressly modify or overrule it.

The Court concludes, for these reasons, that *Central Hudson* and its progeny continue to control the propriety of restrictions on commercial speech.  *Central Hudson* establishes a four-part test for regulations curtailing commercial speech.  *Central Hudson*, 447 U.S. at 566.  First, the plaintiff must prove that the regulated communication is neither misleading nor related to unlawful activity.  *Id.*  Then, the party seeking to uphold the regulation must demonstrate that the regulation serves a substantial government interest; directly advances the government interest asserted; and is not more extensive than necessary to serve that interest.  *Id.*  The burden of proof for the last two elements "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must *demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.*"  *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993) (emphasis added).

The City does not contend that the poster contained anything that was

misleading or involved unlawful activity.  And RCP does not contend that the City lacks a substantial interest in curtailing litter or maintaining the city's aesthetics.  Therefore, as in *Discovery Network*, the only issues of contention are the last two elements of the *Central Hudson* test—whether the regulation advances the governmental interest asserted and whether it is more extensive than necessary.  In other words, the case turns on whether there is a reasonable fit between the prohibition of commercial posters and the City's interest in curtailing litter.  Because it is "well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it," the City bears the burden of showing a reasonable fit.  *Edenfield,* 507 U.S. at 770-71.  If a restriction "places too much importance on the distinction between commercial and noncommercial speech . . . [and] bears no relationship whatsoever to the particular interests that the city asserted," there is no reasonable fit, and the ordinance is invalid. *Discovery Network*, 507 U.S. at 424.

The City has offered nothing on whether the ordinance "will in fact alleviate [litter] to a material degree."  *Edenfeld*, 507 U.S. at 771.  On the current record, the Court cannot determine whether the regulation is stricter than necessary or, conversely, is unduly underinclusive given its limitation to "commercial advertising material."  For example, in *Discovery Network*, the "fit" determination rested at least in part on the number of commercial newsracks versus noncommercial newsracks:

> The benefit to be derived from the removal or 62 [commercial] newsracks while about 1500-2000 [noncommercial newsracks] remain in place was considered "minute" by the District Court and "paltry" by the Court of Appeals.  We share their evaluation of the "fit" between the city's goal and its method of achieving it.

*Discovery Network*, 507 U.S. at 418.  Because the city's primary concern was the

number of newsracks on its streets, and because "all newsracks, regardless of whether they contain commercial or noncommercial publications, [we]re equally at fault," the Supreme Court held that the ordinance was unconstitutionally underinclusive. *Id.* at 426.

Without a more developed record, the Court cannot determine whether there is a sufficient fit between the City's proffered interests and the restriction on speech that is at issue. For example, in *Pearson v. Edgar*, 153 F.3d 397, 400 (7th Cir. 1998), the Seventh Circuit remanded a case back to the district court and directed the court to conduct an evidentiary hearing to allow the parties to create the appropriate record for determining the constitutionality of the statute at issue in light of the standards set out in *Discovery Network.* The district court conducted the evidentiary hearing and eventually ordered a bench trial to gain a better understanding of the issues at hand. *Id.* At the conclusion of that trial—which revolved around a law restricting types of real estate solicitation known as "panic peddling" and "blockbusting"—the district court determined that although "panic peddling and blockbusting did occur in Chicago during the 1960s and early 1970s[,] . . . blockbusting and panic peddling rarely, if ever, occur in Illinois today." *Pearson v. Edgar*, 965 F. Supp. 1104, 1108-09 (N.D. Ill. 1997). The court went on to note that the defendants produced no evidence that real estate solicitation harms or threatens to harm residential privacy—the defendant's cited interest in that case. *Pearson*, 153 F.3d at 400. The court applied the *Central Hudson* test and determined that the statute was unconstitutional based on the underinclusive fit. *Id.*

For these reasons, the Court concludes that even if the City's ordinance is properly read as a regulation of commercial speech and nothing more, RCP's claim is

not subject to dismissal for failure to state a claim.

**Conclusion**

For the foregoing reasons, the Court denies defendant's motion to dismiss [dkt.

no. 22]. Defendant is directed to answer the complaint within fourteen days of this

order. The case is set for a status hearing on September 9, 2016 at 1:30 p.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 2, 2016